We're going to do the situation in the 19 thermometer segments fighter plane. In the plane's second, it's the pilot plane and on theCenter, Amy. Amy, we have. Good morning, may it please the court. My name is Tom Antonini and I'm here on behalf of Appellant Jay Smelts and I would like to reserve one minute of my five minute allotment on his behalf. The issue before this court as it pertains to my client Appellant Jay Smelts is whether the appellees, the plaintiffs below, can pursue a 14th Amendment excessive force claim on behalf of a pretrial detainee without alleging any injury, let alone a de minimis injury. Because not every malevolent touch by a prison guard gives rise to a federal cause of action, the district court erred in failing to dismiss the count against Smelts arising out of the defendant's conduct cannot be said to shock the count. This is a 12B6 case, right? Yes, your honor. So the only question here is whether there's enough in the complaint to get discovery. Then after discovery, potentially have summary judgment to figure out whether to go to a jury trial. What is, tell me exactly what's wrong with this complaint. This is not a bare bones complaint. There's plenty there. The individual dies. I have to tell you, I find the word plausibility is the key touchstone. I find the arguments on your side of the case all basically implausible. I understand 12B6. So tell me what I'm missing. What is missing from the Second Amendment complaint, and this was their third version of the complaint, specifically as to the shove when Deputy Smelts was transporting this pretrial detainee to his cell, is whether that shove constitutes excessive force. It's all context. It's all context, and context is going to come out in discovery. You know, you shove someone next to a 10 foot drop, big risk. You shove someone when they're an inch away from a wall, far bigger risk than when they're not. So, I mean, I just can't imagine how you could think, we're going to throw this out at 12B6. If there was an injury alleged, any injury, I'm not saying it has to be a serious injury, a significant injury, it doesn't even have to be a physical injury, it can be a psychological injury, but the fact that there is no injury whatsoever alleged in the complaint as to the shove, in our view, means that they have failed to state a plausible cause of action for excessive force as to the shove. This is nothing to do with the... Isn't the, in an excessive force case, you know, we do draw from more than one amendment, but I think you would agree, wouldn't you, that the 8th amendment is generally the floor of what we were talking about in the 4th amendment? Well, as a pretrial detainee, the 6th circuit has held that it's the 14th amendment that the standards are essentially the same. Okay, so we've got the, let's look at the 8th amendment standard on excessive force. Isn't the focus there the intent behind the force, and less the extent of the injury? There are clearly two parts to the 8th amendment analysis, the objective and the subjective, and the objective certainly goes to the intent of the act. Well, if the governing standard is whether, is the intent of the act whether the force was used maliciously and sadistically, or as a part of a good faith effort to maintain or restore discipline, how is shoving a pretrial detainee who is in handcuffs, belly chain, and cuffs on his feet also, so that he falls down, he's shuffling down the hallway, and you have this shove that sends him to the floor. How is that an effort to maintain discipline or to restore discipline? Well, I think it's different from a 4th amendment case, and then you're moving up to an 8th amendment case, and these pretrial detainees and inmates under the 8th amendment, they give up rights to be protected from every single shove that might constitute a battery, an offensive touching can be a state toward battery, whether or not there's harm. I want you to go to the intent issue, because that's what the 8th amendment says, that's without question a tougher standard, or a less protected status, because it's an inmate. We have a pretrial detainee who falls in that gray area between free citizen and inmate, and you've got him walking down the hall, you are looking at the intent of the force, he's completely subdued, he can't go anywhere, and he's shoved so hard that he hits the ground and cannot protect himself from his own fall. How can you even meet the minimum floor of the 8th amendment standard? And you're right, your honor, the pleadings are that the shove was done in bad faith and to cause harm, but the courts have held that not every malevolent touch, and malevolent means bad faith and ill will. Why is yours not malevolent when you have a subdued pretrial detainee in chains, and is pushed so hard that he hits the concrete floor? We can presume that it was malevolent, but my argument is that not every malevolent touch, not every shove that's done in bad faith can constitute a constitutional violation. Well, not everyone is, but that's why you need facts, that's why you need discovery, that's why you need to depose the officers, depose any other witnesses. The fact that you keep quoting it, not everyone of these shoves satisfies it. Some do, some don't, that's the implication. They say in their complaint, this one does, so I'm just totally missing how we don't go to discovery to get the witnesses and figure out exactly what happened. My argument, it does not because there's no injury. There's no injury alleged, so they have not stated a claim. It'd be like a car accident case. I was in a car accident, so I want damages, but there's no allegation in that same car accident case about an injury. There's been no injury alleged here related to the shove at all. So, why is that always necessarily true at the 12B6 stage? So, for example, I mean, you can have a situation where, I mean, there's this, I think it's this Hope vs. Peltzer case or something where the corrections officers in Alabama are forcing this inmate to stay out in the sun, they're handcuffing him to something, and, you know, it's just, it's ridiculous, you know, it's almost the whole day. He's not thrown out of court if he comes back, if all he says is this was malevolent, they had no right to do this, it's sadistic, etc., and the state comes back and says, well, he's okay, we've just looked at him, you know, he's okay. It wasn't a great thing for him to have to suffer through being out in the blazing sun for, you know, change to this post, but he has no lasting injuries. He wouldn't throw that out. I think that is similar to the Pelfrey case in the Sixth Circuit here where it was more of a psychological injury, where they were taunting this prisoner, they were cutting his hair and joking about it, laughing at it, and he was fine, there was no physical injury. I'm not saying there has to be a physical injury, there has to be some injury. It could be psychological, it could be threatened with harm, it could be a trifling physical injury, but there has to be some injury alleged even in the handcuff cases under the Fourth Amendment, which is a lower standard. You have to at least allege some injury from the handcuffs. We've said that in those cases. I don't think we've said that for all cases. I know what you're talking about in the handcuffing cases, but the fact that we're so specific about it there seems kind of damaging to the other cases. I would point to this court's decision in Leary v. Livingston in 2008 where the court concluded that... That was a karate chop, supposedly, and the testimony from that inmate or that pretrial detainee was that it didn't hurt, and I kind of joked with the guy about it. I'm struggling to see how that has any applicability here. To me, the admission in the Leary case that it did not hurt is identical to the allegation or the lack thereof in this Second Amendment complaint that there was no injury. It's just a shove in the back. There is an allegation in the complaint that there was no injury? That's all you've got. We don't have discovery. There's an absence of an allegation. Maybe this case is one-off because he ultimately dies. We're really going to say, in a setting where the first claim relates to one officer who shoves him, hits his head on the floor, and then moments later, the choke hold, and he dies, and we're now going to throw the complaint out because the plaintiff didn't try to figure out exactly what the injury was before he died? That seemed just totally bizarre. Well, they've had three attempts. There's clearly an injury. There's kind of a lasting one, and you're supposed to identify exactly what the injury was besides saying maliciously shoved, hit head on floor. That doesn't make sense to me. The district court dismissed the account as to wrongful death against Jay Smelch as far as there's no evidence, no allegations that are plausible as to the death. I understand the point, but I'm totally agreeing with you, your premise, that your client is the key person on the first incident, another officer the key person on the second incident. I'm just making the point, it seems very strange to say during this short spell of time, we're supposed to figure out exactly what the quantifiable injury was when moments later he dies. Isn't it enough to just say, maliciously shoved, hit the floor with his head? I think you at least have to allege an injury, and there's cases with shoves into walls, but there's allegations. How do you respond to the Supreme Court's decisions in Hudson and Wilkins that clearly said the issue here is less the injury. The issue is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. That's the standard you have to meet, and how is that not alleged in this complaint? What's missing is an allegation of any injury. In the Hudson case, in the Wilkins case, and even Larry, as Larry said, the issue properly framed is whether the force was de minimis, not just whether the injury was de minimis. So the courts are getting away from the injury analysis, although it's still relevant. So you have an allegation that he pushed a guy in chains so hard that he hit, I think, the wall and then the concrete floor, and that's not an allegation that's sufficient. Without an injury, it may be a battery. It's an offensive touching. Let's hear from the others. Thank you. You'll get your minute of rebuttal. So thank you. Good morning, Your Honors. May it please the Court. I'm Joe Simpson. I'm here on behalf of Appellant John Gray. As we set forth in the brief, one of the critical errors here made by the District Court is that it applied the wrong standard in evaluating John Gray's claim to qualified immunity. That is, we're dealing with the case of a pretrial detainee. Why does it make a difference in a 12B6 case? I'm sorry, Your Honor. Why does that make a difference in a 12B6 case? Either way, particularly as to your client, I have no idea how this does not get to discovery. And that's your burden. Our position, Your Honor, is that taking... So you have to be focused on the complaint as to why you don't move to the next stage. And indeed we are, Your Honor. The complaint alleges that John Gray acted to restrain Mr. Benton only after Benton continued to resist, after engaging in a course of combative conduct throughout that morning. That continued into the jail cell. Now wait a minute. Let's walk back through the facts. Yes, Your Honor. You took him out and you're bringing him back from the hospital. Agreed there were some problems. You had to get him in. You had to restrain him. Now you're walking down the hallway with this pretrial detainee in all imaginable methods of restraining. He is unquestionably subdued, right? We disagree, Your Honor. He... No, then tell me how a man walking down the hall in chains, handcuffs, leg irons, belly chain, is not subdued. The claims with respect to John Gray relate to what occurred in the medical cell. In the medical cell, the officers were attempting to remove the restraints from Mr. Benton. He continued to resist the legitimate commands of law enforcement officers. Wasn't he chained? Okay, well then don't... Fighting... Leave the... Don't remove the restraints. Well... Why is that the obvious answer? They were commanded by a jail policy judge to remove the restraints, and they were acting reasonably while the inmate was in the cell. Wait, but you have option A is leave him in restraints. Option B is a fatal chokehold, and you pick option B because you have to? No. Well, the test judge here is whether Mr. Gray's conduct under the 14th Amendment was malicious and sadistic for the very purpose of causing harm. Very fact... Under the complaint... There's enough in the complaint to plead a constitutional violation. How could you possibly throw this out at 12B6? I mean, it just completely blows me away. Well, because, Your Honor, the district court applied the wrong standard. It applied a Fourth Amendment objective reasonable standard. Whether... The complaint suffices. You don't... You don't win a 12B6 case because a district court judge makes a mistake, allegedly, potentially, in terms of the constitutional analysis. You still have to go back. You just can't leverage that mistake into granting the motion to dismiss. We would turn the court's attention to multiple cases that we cited in our brief where a pretrial while restrained and multiple district courts within the circuit have found that it is constitutionally permissible to tase a suspect under those circumstances or to apply a choke hold. We've cited cases from other circuits... How many cases do you have where the inmate died and the case was thrown out at 12B6? Just tell me those cases. I'm really curious. I can't give you a 12B6 case offhand, Your Honor. Do you think there's ever been one in the history of this country? It is quite... I really am doubtful. At 12B6. I mean, if someone properly understood 12B6, if they didn't understand it, different story. If they're applying 12B6, I can't imagine the case. We submit that under the facts as alleged in the complaint and taken as true, plaintiffs concede that the pretrial detainee was resisting the efforts of law enforcement officers. That they were. And to use... To apply a carotid restraint hold, which this court previously said should only have caused him to lose consciousness, was a reasonable measure under these circumstances. And when he continued to apply it when a fellow officer said to stop, why does that not indicate that even under your argument, that this pretrial detainee was subdued and he should stop choking him? The complaint does not even make an allegation about the duration of the hold. To hold this officer to the question of... This officer saying, stop choking him, correct? It does, Your Honor. And he did not stop, is what the complaint alleges, correct? It does say that, and we would submit that that's an allegation that he applied the hold too long. And that rises the level of a negligence claim. It doesn't shock the conscience. It doesn't demonstrate that his conduct was malicious and sadistic for the very purpose of causing harm. Then why, if he knew that he had not done something improper, did he not then seek medical care for Mr. Benton? And why did he lie about it to the FBI if he knew it was not improper? Well, we would submit he was convicted of a charge of making a false statement for filing a report that said, Benton resisted and he used reasonable force to restrain him. There was no lie there. There wasn't an omission of the specific claim. And that Mr. Benton, my understanding of his testimony was that, and then Mr. Benton was up and moving around after the chokehold was over. Was there not? I think there was a statement that he was moving within the cell, Judge. That he was moving within the cell after the chokehold, right? That's a lie, isn't it? I disagree, Your Honor. In the full record, another witness testified that he believed that Benton was breathing at the criminal trial. We're getting a little far afield of the complaint, which of course this is being decided upon. But we submit that under the facts taken as true as pled in the complaint, Gray's actions were a reasonable response to a resisting pretrial detainee. I think we understand your argument. Thank you. Thank you, Your Honor. Let's turn to Mr.'s lawyer. Am I right in thinking that if they lose, you lose? No, Your Honor. First of all, Dennis Lyle on behalf of then-sheriff, now-retired, James Talb. There. Certainly, if they would prevail, Sheriff Talb would also prevail. Ah, so you like it that direction? Yes, Your Honor. Okay, well tell me how it doesn't work in the other direction. However, the basis for the allegation against Sheriff Talb rests upon statute 311.05, which is an Ohio statutory provision which specifically deals with holding the sheriff liable for the actions of its deputies, but only under certain circumstances. It talks about whether or not the sheriff was involved, whether or not he participated in it, whether or not he ordered it. The complaint says he was made aware and had full knowledge of the assault on Benton and yet ratified it by silence. Why isn't that? That seems to fit exactly the way around the Ohio immunity and that's, again, a complaint. That's all it is. It's a complaint. And the norm is to let complaints proceed to discovery. Certainly understand that, Your Honor, relative to the standard that we're here about at 12B6. First, if I could step back. On the allegations there, they are isolated allegations within the individual causes of action. They are singular lines. Defendant Talb is liable for negligence. Because I believe the burden ultimately rests upon the plaintiff in the underlying action to set forth the fundamental factual allegations. Now the allegation that he was— Rule 8 says you give notice, you provide information so that the parties know what the accusations are and then isn't there a clearer law that you review the complaint as a whole? Your Honor, while that is certainly the principles of Rule 8, when the Supreme Court in the Twombly and the Iqbal decisions dealt with it, they looked beyond whether or not there needs to be a basic fundamental factual detail that is set forth. That same court goes on to talk about whether or not there are threadbare allegations, whether they are simple legal statements. When we look at the statements and the arguments in their presentation, they cite to certain provisions of paragraphs 41, 42, 45, those—it is our position, Your Honor—are actually legal allegations. They are nothing more than a fundamental restatement of the elements of the claim as opposed to the factual basis for the individual claims. It is ultimately the plaintiff's obligation if they are going to pursue a claim against the sheriff's help to lay sufficient factual foundation and that is where, Your Honor, with all due respect, I believe— It is all context specific and they have to do enough facts to make it a plausible allegation. What I read to you, I can't imagine not sufficing. Your Honor, they have referred to paragraphs 41 and 42 and when we look at those, each of these deliberate and intentional falsification— Paragraph 40. Paragraph 40, Your Honor, specifically talks about, I think, a general statement of knowledge  It doesn't— He was made aware and had full knowledge of the assault on Benton. But within that very same sentence, Your Honor, it goes on to say, but nothing nonetheless intentionally and deliberately made false statements. Your Honor, I believe that is a legal statement, not a factual statement. If they are to prevail against and set forth a sufficient factual foundation against Sheriff Talb, it needs to be set out in detail. It's not something they have done. If he made a false statement, would that make him liable under both the state law and the federal law? I did not catch the beginning of your question. If he made this false statement, as they've claimed? No, Your Honor, I don't believe so. I believe we're talking about some type of ratification of the actual acts itself. That would, in and of itself, perhaps be an independent cause of action, which was not alleged, but it's certainly not one that constitutes a ratification of particular acts and circumstances here. Ultimately, it's our position, when you look at the precedent that's come down through the Twombly decisions and the Iqbal decisions, that you have to tear apart these complaints and look to make sure that there is a sufficient factual predicate. And how do you account for the law that says, both Rule 8 and case law, that very frequently speaks in terms of viewing the allegations of the complaint as a whole? Is your argument that you need to take each factual allegation and repeat it in each numbered paragraph? No, Your Honor, I believe Rule 10c would address that, so long as it's properly incorporated there. But specifically, where... And so you have here allegations in the complaint that officers undertook these inappropriate actions, and an allegation that Sheriff Telb ratified those by continuing the lie and replicating the lie about those actions not having occurred. Why isn't that enough? To begin, Your Honor, even within the context of the Rule 8c, we're talking about notice pleadings, but even notice pleadings require a fundamental basis of having a sufficient amount of facts that are alleged. It's not... It's our position that these are simply legal allegations that exist here, that they are not... When you look at the exact statement itself, it needs to be looked at, and it's in its I don't believe it's appropriate that you can piecemeal or should piecemeal out sections of a sentence in itself. I believe they have to look at the entire sentence at least, at least in that particular context, and when you look at paragraph 40, you look at the other paragraphs that they cited within there. Your red light's been on for a while, so thank you very much. Thank you, Your Honor. I appreciate the thought. Okay. I'm going to please the court. My name is Apu Paul. I represent the appellees in this case. address a couple of the arguments that were made by the appellants in this matter. As to the allegation of injury, we have attached the indictment, paragraph 63A of the indictment, I believe. We state that it results in bodily injury. That is more than sufficient. Explain to me what you're saying. You're saying the complaint has the indictment attached to it, and in the indictment there's a mention of injury? Yes. And we incorporated the allegations from the indictment into the complaint. We attached it as a document, and therefore that's a part of the complaint. We allege injury therein. We submit that the fact that he was knocked into the wall and fell to the ground and not being able to break the fall itself is sufficient to allege injury, but the fact that we attached the indictment to the complaint, it says very specifically bodily injury. So I think it's beyond the pale to suggest that there's no injury. Okay. Got that point. Anything else? As far as the ratification is concerned, paragraph 49 of our brief, in paragraph 40 through 48 in the complaint, alleges exactly statement by statement by statement by statement as to how the conduct, how Sheriff Tell ratified the conduct of the officers under 311.05. Does that make him liable under the federal law or just under the state law? Both, Your Honor. What's your best case on the ratification for 1983? Well, the ratification... I don't think you answered that question correctly. That's right. I missed. I did not answer it correctly. The ratification under 311.05 relates to state law claims only. The 1983... You can't immunize through state law the 1983 claim. I'm sorry, Your Honor? You can't immunize through state law the federal 1983 constitutional claim. That is correct, Your Honor. The 1983 claims as to Sheriff Tell were the failure to train claims that have passed the motion to dismiss and that we've said that those, the failure to train and the de facto custom and policy allowing excessive force. I think your friend on the other side concedes as to the federal claim, its derivative, right? In other words, if the other two win, he wins, if the other two loses, he loses at 12B6 on the federal claim. Correct. Correct. Your Honors, frankly, we simply do not kill people who are awaiting their day in court and that's exactly what happened here. If there's any case that cries out for a denial of immunity... What's the... Should we worry about this standard at this point in the case? Because, I mean, there's two different ways to think about this. One way is to say, this is just 12B6. No matter what the district court did, that doesn't require us to do anything other than what you normally do in 12B6, which is just analyze the complaint and is there enough here to get to the next stage and 12B6 is not necessarily the time to sort through exactly what the standard is for excessive force against a pretrial detainee. That's option one. Option two is to delve into what the standard is for a pretrial detainee, even though it's just 12B6 and it's not necessary to figure out whether to affirm. So what should we do here and why? I agree with the first, but assuming that we do the second, Your Honor, the... Which do you... Which would you prefer? I would prefer the first. I would prefer the first. Just affirm and don't get into the standard. Affirm and don't get into the standard. But to the extent that this court does go into the standard, the question here is whether we have stated enough in the complaint to meet the standard that they are otherwise not immune. Now, I... That's not... Okay. So if you... Okay. So you've told us your preference, but what I'm really more interested in is if we do get into the second thing, why... What do you think the proper standard is? The proper standard under these facts is the 14th Amendment deliberate indifference to the federal... Not shocks the conscience? Well, Your Honor, under the Claybrook case, the shock the conscience, there are two prongs to the shock the conscience inquiry. The first hand is the malicious and sadistic, and that applies in certain circumstances. For example, under the Claybrook case, the Budd case, and the Dara case from this circuit, the malicious and sadistic standard applies where there's emergent circumstances, where there needs to be... Where there's combativeness, where there's an emergent circumstance, where it's dangerous, rapidly evolving circumstances. Such as, for examples of this court, prolonged gunfights, prison riots, police chases, demonstrations that turn violent. And what they have done, the defendants have done in their argument with respect to the immunity issue, is converted this otherwise ordinary run-of-the-mill detainee transfer into something that's otherwise violent. That's not the case. In circumstances that are not so emergent as those situations, we use the standard under the 14th Amendment, the deliberate indifference to federally protected rights. That's the... And you consider that easier for you to meet than Shocks to Conscience, I take it? Well, yes, because, well, they're both under the applicable cases, those, the malicious and sadistic, and the deliberate indifference, are two different prongs of the 14th Amendment Shocks to Conscience test. That's under Claybrook, Budd, and Dara. What we are suggesting... What we are suggesting... So your answer should be just, no worries, I don't care what words you use, they're the same thing. Well, they're the same thing. Well, we meet either standard... It's governed by circumstances. The difference is the governing circumstances, whether there is time to think. Correct. Whether there's time to contemplate, or whether you are in an emergency situation in which you must act immediately. In this... Yes, Your Honor. In this circumstance, there was no emergent situation. I totally get that. I agree with that. Let's assume you're exactly right on that. That leads you to say the standard is X. The words you want us to use to describe the standard they need to meet. They need to meet the standard that their actions were not deliberately indifferent to my client's constitutional rights. In this circumstance, they meet the lowest... They can't pass the 8th Amendment test, which is the lowest. They can't pass the malicious and sadistic prong of the 14th Amendment, and they can't even pass the deliberate indifference test. They were clearly deliberate... It's my sense that it was cruel and unusual. It doesn't pass the 8th Amendment. They surely don't pass the deliberate indifference test. In this circumstance, everything they did shocked the conscience such that it was malicious and sadistic. We just even... You would agree that the 14th Amendment here, part of that standard, is the prohibition on punishment? It's the prohib... Is that... So that plays in... Yes, Your Honor. It's the prohib... Were punishments relevant to pretrial detainee? Well, if any action taken against a pretrial detainee is for punishment purposes, it's not... It's... They exceed the standard, and they are not immunized. So, if... Because under the 14th Amendment, that operates almost as a floor... As a floor. ...as does the 8th Amendment standard. Yes, Your Honor. Yes, Your Honor. So, in this case, we think it's as clear as day that their conduct doesn't pass any test. They latch on to a... Tell me this.  So, we don't... Let's just go back to the first option. We don't get into all of this now. Maybe we do. Maybe we treat it as a must case, so we get into it. If this case doesn't settle, it might not be a bad idea for it to settle, but let's assume that doesn't happen. So, you go back, and let's say we've... Maybe we just say we're not sure the district court was right about this assessment of the standard for the sake of our argument. Is that going to affect discovery? I mean, is it going to make much of a difference in terms of discovery that we do not lay out exactly what the standard is? No. I'm just trying to fit... You don't think it will? No, it doesn't. Will it make a difference when you come to summary judgment? Well, we'll argue what needs to be argued before the trial court in summary judgment, and the trial court will rule, and then we might come back here. It's going to be appealed either way. It'll be appealed. I might see you hopefully in two years, maybe. I don't know. But the fact remains, in this case, the complaint has said far more than enough to meet any standard. The guy was killed because he was squirming under any standard, Your Honors, under any standard. We meet it. Yeah. All right. Well, we understand your argument. Thanks very much. Thank you. So I think we gave you some rebuttal. Very briefly, Your Honors, just a couple of quick points. Mr. Paul suggests that the standard undershocks the conscience here with respect to Darrow, the two prongs. One, where an officer has to act with haste. What's your take on the option of just not getting into the standard? This is a 12B6 case. The question is whether you move to the next stage. You don't get into exactly how each test works at 12B6. The complaint doesn't have to lay all that out, and I don't understand why we have to do that. We must get into the standard because our position is... What if we think you lose under any conceivable standard ever known to the F-thirds, or F-seconds for that matter? We submit that John Gray was entitled to have his qualified immunity claim evaluated by the district judge under the correct standard. Yeah, but we can say... What if we say you lose under every standard? We lose under the standard you propose, we lose under the standard he proposes. Why do you have to do more than that? I don't understand your theory of why we can't do that. Well, because we had a clear error here. Gray was entitled under Rule 12C to have his claim evaluated under the proper standard. The district judge didn't do it. I would also submit, Your Honor, that under the facts as pled, it's clear that John Gray was in a position where he had to act with haste, and therefore the malicious and sadistic... Just one more factual question. He has the guy, once again, leg irons, cuffs, belly chain, chained to the bed. Why was that an emergency situation in which he had to act? They were in the process of unshackling Mr. Benton as required by jail policy, and hence he was continuing to struggle with them, and they were in a situation where they needed to restore order and discipline. He did not act maliciously and sadistically for the very purpose of causing harm. We submit that discovery for more facts are not what is needed by plaintiffs. What is needed is a claim that establishes a constitutional violation, and this complaint does not do it. Your red light is on, so thank you. Very briefly, Your Honor, if I may, we've had suggestions that John Gray killed the defendant. The jury answered a special interrogatory in the criminal case, finding that John Gray's actions did not result in his death, and in the criminal case, John Gray was acquitted of the charge of strangling and assaulting him under the Civil Rights Charter. Thank you for your patience. That is true, Your Honor. Okay. Your Honor, in the short order that I have, I'd like to address your specific question of do we need to look at the standard. And the reason, and I believe we absolutely have to do so, to provide guidance at the lower court proceedings. This was not a complete appeal. This would not have wiped it out, win or lose on however that goes. We'll provide the guidance if you promise not to do an interlocutory appeal if you lose a summary judgment, and we'll deal with this after a jury trial. Ultimately, Your Honor, I think it ultimately will bear out if the court sends it back on particular issues to look at the specific facts that will evolve beyond what the scope of the complaint was. That would dictate it. But having an understanding and a direction of what the legal principles are, are critical. That's not the point of 12b-6. That's not the point of 12b-6. It's the last thing I personally want to encourage people to do, to have 12b-6 interlocutory appeals that are borderline frivolous to get some guidance on the standard. That's not the point of this. It's not guidance. Perhaps that's a poor choice of words from my end. But the trial court utilized a Fourth Amendment standard on a Fourteenth Amendment case. I don't believe that's frivolous when we have two completely different standards, which this court itself has recognized are differing levels, have a higher burden. I believe applying the right standard prevents us from having further error should this court, should we ever be back here or whether we're in a trial setting. Okay, I understand. Thank you, Your Honor. Is that, did you have? Okay. Thank you for your briefs and arguments. We appreciate it. The case will be submitted. The clerk may recess.